CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
JUN 26 2018
JULIA C. DUDLEY, CLERK
BY: s/ MARTHA L. HUPP
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| CHRISTEN WADDLE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:18-cv-00010 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| AUNDREA CLAUGHTON, et al., | ) | By: Hon. Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Defendants. | ) | |

This matter is before the Court on Defendant Todd Moser's ("Moser") Motion to Dismiss [ECF No. 12] and Defendant Aundrea Claughton's ("Claughton") Motion to Dismiss [ECF No. 14]. Clerk's default has already been entered against Defendants Nicholas Jones and Dre Tucker. [ECF No. 24.] The matter was fully briefed by the parties, and I heard oral arguments on the motions on June 12, 2018. After considering the allegations in the Complaint and the arguments of the parties, this matter is now ripe for disposition. For the reasons stated herein, Moser's Motion to Dismiss will be granted with respect to Counts 5 and 8, and Claughton's Motion to Dismiss will be denied.

I. **STATEMENT OF FACTS AND PROCEDURAL BACKGROUND**[1]

On December 20, 2017, while Plaintiff Christen Waddle ("Plaintiff") was driving down the road in Halifax County, Virginia, she encountered an emaciated dog running loose in the middle of the road. The dog was "lethargic and shaking. Its ribs were visible and it had obvious facial scratches." (Compl. ¶ 10.) She called Animal Control, but no one answered.

---
[1] The facts are taken from Plaintiff's Complaint [ECF No. 1]. As this stage, it is appropriate to accept Plaintiff's factual allegations as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While inspecting the dog, she noticed a tracking collar with Defendant Nicholas Jones's name and phone number. Plaintiff called him, but no one answered.

While she was on the phone, the dog moved to the driver's side door and, with "labored effort," pawed its way into the floorboard. Being of a compassionate mind, she moved the dog to the passenger side. Her intent, according to the Complaint, was to take the dog to Animal Control.

Plaintiff located Jones's Facebook page and left him a message. She told him she found his dog and that, if he wanted him back, the dog would be at Animal Control. She described the dog's condition to Jones as "pathetic."

Plaintiff began driving the dog to Animal Control but needed to stop for gas. While she was pumping, she saw a pickup truck with dog kennels and two dogs in the back "race by the gas station." As the truck came on the lot, Plaintiff began to fear for her safety and called 911. The truck stopped next to her car and five men exited the truck and surrounded her car.

The five men, including Defendants Tucker and Jones, began calling her vulgar names and threatening to break her windows if she did not immediately turn over the dog. The dispatcher told her to get in her car, but Plaintiff feared that if she unlocked her car to get in, the men would simply open the door and take the dog. She confirmed to the dispatcher that the dog belonged to "them," but that the dog was starved. Plaintiff asked the dispatcher to have Animal Control come to the scene.

As a Halifax County Sheriff's deputy drove up (apparently unrelated to Plaintiff's 911 call), the pickup truck and three of the men promptly left before engaging with a deputy.

Defendant Claughton, an assistant animal control officer in Halifax County, arrived on the scene. Claughton picked up the dog and told Plaintiff and Jones, "I'm taking this dog with me; he is starved and underweight."

At Animal Control, "A. Conner" inspected the dog. Jones, the dog's owner,[2] was given a "cruelty warning" and directed to take the dog to a vet within 24 hours. Conner released the dog to Jones less than an hour after Plaintiff first encountered the animal.

Plaintiff spoke with Claughton at 12:59 p.m. that same day and expressed her dismay that the dog was returned to Jones. She told him she would not "let this go," and that she would be reporting him to the "highest possible authority" for his "dereliction of duty."

At 2:00 p.m., Claughton had Jones and Tucker come to Animal Control "for the purpose of cooking up bogus criminal charges against" Plaintiff. (Id. ¶ 36.) Jones and Tucker prepared handwritten, unsworn statements at 3:37 p.m. Plaintiff alleges that "[b]oth Jones and Tucker's statements, as procured by Claughton, were false in that they failed to properly describe what had happened at the gas station." (Id. ¶ 37.) "Their statements intentionally left out the crucial fact which [Plaintiff] had made clear—as confirmed on the 911 tape . . . —that she was taking the dog to Animal Control because of its obvious physical distress." (Id.) Plaintiff alleges "Claughton knew of [Plaintiff's] humane intent . . . , but he nevertheless orchestrated the crafting of Jones's and Tucker's written statements to make it appear that [Plaintiff's] intent was to permanently convert the dog to her ownership." (Id.)

After securing the statements, Claughton sought arrest warrants from the magistrate, which were issued at 4:23 p.m. that day. Plaintiff was charged with felony larceny for the "taking" of the tracking collar and misdemeanor larceny for the "taking" of the dog. According

---

[2] Tucker owned a GPS tracking collar worn by the dog. It was through this tracking collar that the men were able to locate the dog's location at the gas station.

to Plaintiff, "Claughton did so with full knowledge that [Plaintiff] had not taken the dog with the intent of acquiring permanent ownership, as required by law for a larceny charge, but instead was only seeking to secure the protection of Animal Control over the dog's well-being . . . ." (Id. ¶ 38.) Plaintiff alleges there was no probable cause to initiate larceny charges against her, and that Claughton knew he could only secure arrest warrants by omitting vital facts.

The next day, on December 21, Claughton accompanied Jones and Tucker to the vet. Given the dog's abject condition, it was euthanized.

Defendant Todd Moser, Claughton's supervisor, did nothing to see that the now-pending criminal proceeding, "based on the improperly issued warrants, was dismissed." (Id. ¶ 42.) Plaintiff does not allege when or how Moser became aware of the situation with her, Claughton, Jones, and the dog.

Plaintiff was served with the warrants on December 26, and was instructed to appear for arraignment on January 3. She was released on a $1,500 unsecured bond.

During news coverage of the incident, Moser stated that he stood behind Claughton's decision to seek warrants against Plaintiff and would not "second guess" his officers. Moser did not inform the press that the dog was put down. When asked why he did not disclose that information in prior reporting on the incident, Moser responded: "[I]t was not something I felt you needed to know."

As a result of the "persecution" against her by Claughton, which had been ratified by Moser, Plaintiff felt "chilled" in her First Amendment right to speak out. The actions of Claughton and Moser "caused [Plaintiff] to withhold further public criticism of [Claughton's] actions now that the reality of criminal prosecution, and the threat of criminal conviction and imprisonment, was real." (Id. ¶ 49.)

On January 3, 2018, Plaintiff appeared *pro se* at her arraignment. At that time, Commonwealth Attorney Tracy Quackenbush Martin dismissed the charges against Plaintiff. In a public statement after the arraignment, Martin said "the evidence did not indicate criminal intent as required by law." (Id. ¶ 52.) Martin did not explain, however, "why Moser and Claughton had not approached her to secure an earlier dismissal of the charges before January 3 given the obvious defect in their issuance." (Id.)

That same day, Moser spoke on camera with a reporter. Moser stated that he stood by what "we did," and that he stood behind Claughton. (Id. ¶ 54.) Although not broadcast, Moser was reported to have stated: "[W]hen [Plaintiff] refused to give the dog back to the Owner, when the Owner confronted her on the way to take the dog to Animal Control, that constituted theft." (Id.) Plaintiff contends the accusation of theft was defamatory *per se.*

Following the dismissal of the charges against Plaintiff, Claughton prepared a report recommending charges against Jones for "failure to provide veterinary care when needed to prevent suffering or disease transmission" and "failure to provide adequate shelter." (Id.)

Plaintiff has filed suit alleging ten counts: Count 1 (§ 1983 against Claughton for violating Plaintiff's First Amendment rights); Count 2 (§ 1983 conspiracy claim against Claughton, Jones, and Tucker for violation of Plaintiff's First Amendment rights); Count 3 (§ 1983 claim against Claughton for violation of Plaintiff's Fourth Amendment rights); Count 4 (§ 1983 conspiracy claim against Claughton, Jones, and Tucker for violation of Plaintiff's Fourth Amendment rights); Count 5 (§ 1983 claim against Moser for his violation of Plaintiff's Fourth Amendment rights); Count 6 (state law malicious prosecution claim against Claughton); Count 7 (state law conspiracy claim against Claughton, Jones, and Tucker); Count 8 (state law malicious prosecution claim against Moser); Count 9 (state law defamation claim against Moser); and

Count 10 (state law fighting words claim against Moser). Both Claughton and Moser have filed Motions to Dismiss. Neither Jones nor Tucker responded to the Complaint, and the clerk entered default against them both. [ECF No. 24.] Plaintiff opposed both motions, and I heard arguments from the parties on June 12, 2018.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. In determining facial plausibility, the court must accept all factual allegations in the complaint as true. <u>Id.</u> The Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." <u>Twombly</u>, 550 U.S. at 555 (internal quotation marks omitted). Therefore, the Complaint must "allege facts sufficient to state all the elements of [the] claim." <u>Bass v. E.I. Dupont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2003). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555.

## III. DISCUSSION

Both Motions to Dismiss will be addressed in turn, as will the various arguments to dismiss certain counts of the Complaint.

a. <u>Moser's Motion to Dismiss</u>

1. <u>Count 5 (§ 1983 claim against Moser for his violation of Plaintiff's Fourth Amendment rights)</u>

Moser contends he had no authority to "stop" Plaintiff's prosecution once the arrest warrants had been issued. He is correct. Under Virginia law, only the court, on the Commonwealth Attorney's motion, can dismiss charges once they have been field. <u>See</u> Va. Code Ann. § 19.2-265.3 (2018). Because Moser had no authority to stop the prosecution, and because Plaintiff has not alleged he had any role in or knowledge of the allegedly tainted process to secure the warrants, Count 5 will be dismissed.

Insofar as Plaintiff attempts in her response to morph her allegations into one for supervisory liability under § 1983, she has failed to allege Moser's knowledge of or acquiescence to Claughton's alleged wrongful conduct. In order to state a claim for supervisory liability under § 1983, Plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

<u>Shaw v. Stroud</u>, 13 F.3d 791, 799 (4th Cir.), <u>cert. denied</u>, 513 U.S. 813 (1994). At most, Plaintiff has alleged that Moser learned the true facts after the warrants had been issued. At that point, even if he ratified every action Claughton took, Plaintiff does not state a claim for supervisory liability under § 1983.[3]

---

[3] To establish the first element—knowledge—a plaintiff must show "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." <u>Shaw</u>, 13 F.3d at 799. In turn, in order to establish a "pervasive" or "unreasonable" risk of harm, a plaintiff must present "evidence that the conduct

Plaintiff also attempts to avoid dismissal by essentially arguing that the mere knowledge of Claughton's alleged Fourth Amendment violation is sufficient to impose liability on Moser. More or less, Plaintiff argues that every minute she was under the threat of criminal prosecution was a new or continuing Fourth Amendment violation sufficient to impose liability on actors who learned of her plight *after* the arrest but did not actively dismiss the warrants. The law does not support her argument.[4]

A Fourth Amendment seizure is complete upon arrest. See Riley v. Dorton, 115 F.3d 1159, 1161-63 (4th Cir. 1997) (en banc) (collecting cases for the proposition that, in the context of an arrest, a "seizure is a single act, and not a continuous fact"), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010). Even assuming that the *threat* of prosecution was a sufficient "seizure" under the Fourth Amendment, "[b]y its terms, the Fourth Amendment . . . applies to the 'initial decision to detain an accused,'" and not to whatever comes after. Id. at

---

is widespread, or at least has been used on several different occasions and the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." Id. To establish the second element—"deliberate indifference"—a plaintiff must show "a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id. (quoting Slakan, 737 F.2d at 373). The Fourth Circuit has counseled that this is a "heavy burden:"

> Ordinarily, [a plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities. Nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct. A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.

Slakan, 737 F.2d at 373 (internal citations omitted). The third element—causation—is established "when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." Shaw, 13 F.3d at 799 (quoting Slakan, 737 F.2d at 376). "[T]he causal link may be supplied by tort principle that holds a person liable for the natural consequences of his actions." Wellington v. Daniels, 717 F.2d 932, 936 (4th Cir.1983).

[4] Plaintiff's counsel's over-the-top admonitions about opposing counsel and this Court's potential rulings notwithstanding.

1163 (quoting Bell v. Wolfish, 441 U.S. 520, 533-34 1979. In Robles v. Prince George's County, for example, the Fourth Circuit "declined to apply the Fourth Amendment to an arrestee whom police from one county abandoned while handcuffed to a metal pole at a shopping center in another county in which the arrestee had outstanding warrants. The court concluded that, when the officers arrested the plaintiff, handcuffed him, and placed him in the police cruiser to begin the trip to the neighboring county, the arrest was complete and the Fourth Amendment ceased to apply to the subsequent conduct." Wofford v. Evans, No. , 2002 WL 32985799, at *3 (W.D. Va. Dec. 17, 2002) (citing Robles v. Prince George's Cnty., 302 F.3d 262, 267-69 (4th Cir. 2002)). Accordingly, the mere fact that she had been arrested in the past and was awaiting trial on the charges does not create a new Fourth Amendment violation for every intervening moment sufficient to impose liability on the warrant affiant's supervisor. Plaintiff has failed to state a claim under § 1983 against Moser for the alleged violation of her Fourth Amendment right to be free from unreasonable seizures.

2. Count 8 (state law malicious prosecution claim against Moser)

In order to state a claim for malicious prosecution under Virginia law, "it is necessary that it be alleged and provided: (1) that the prosecution was set on foot by the now defendant and that it had terminated in a manner not unfavorable to the now plaintiff; (2) that it was instituted, or procured by the cooperation of the now defendant; (3) that it was without probable cause, and (4) that it was malicious." Wiggs v. Farmer, 135 S.E.2d 829, 831 (Va. 1964).

Here, Plaintiff has failed to allege that Moser had any role in instituting the prosecution against her. At most, she has alleged that he failed to dismiss the charges after they were initiated. As stated above, Virginia law only vests the authority to dismiss a charge with the court, and only upon the motion of the Commonwealth. Accordingly, Plaintiff has failed to

allege the facts necessary to state a claim for malicious prosecution, and Count 8 will be dismissed.

### 3. Counts 9 (state law defamation claim against Moser) and 10 (state law fighting words claim against Moser)

Moser contends that Counts 9 and 10 fail to state a claim for defamation. He contends that the claim is predicated on the fact that the charges against Plaintiff were dismissed by the Commonwealth Attorney; Plaintiff counters that "a judgment . . . in a criminal prosecution does not establish in a subsequent civil action the truth of the facts on which it was rendered . . . ." Godbolt v. Brawley, 250 Va. 467, 470 (1995).

Moser's argument misstates what Plaintiff has alleged. Her defamation claim, as I read the Complaint, is premised on Moser's statement that Plaintiff committed a "theft" when she failed to return the dog to its owner at the gas station. "At common law, defamatory words that are actionable per se are . . . those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished." Tronfeld v. Nationwide Mut. Ins. Co., 636 S.E.2d 447, 449–50 (Va. 2006) (quoting Fleming v. Moore, 275 S.E.2d 632, 635 (Va. 1981)). Accordingly, when Moser publically accused Plaintiff of "theft," a crime of moral turpitude that could be indicted and punished, he committed defamation *per se*.

Of course, truth is a defense to any claim of defamation. If Moser can prove that, under Virginia law, Plaintiff's actions were a "theft," despite the Commonwealth Attorney's opinion otherwise, then he will be entitled to prevail. At this stage, Plaintiff has made the necessary allegations for Count 9 to proceed.

Moser made no separate argument for dismissal of Count 10, so his Motion to Dismiss Count 10 will be denied on the same grounds as Count 9.

b. Claughton's Motion to Dismiss

1. Count 2 (§ 1983 conspiracy claim against Claughton, Jones, and Tucker for violation of Plaintiff's First Amendment rights) and 4 (§ 1983 conspiracy claim against Claughton, Jones, and Tucker for violation of Plaintiff's Fourth Amendment rights)

Claughton contends that Counts 2 and 4 fail to state a claim for conspiracy to violate one's constitutional rights because she does not allege "that the conspiracy [was] motivated by 'some racial, or perhaps otherwise class-based invidiously discriminatory animus . . . ." Trerice v. Summons, 755 F.2d 1081, 1085 (4th Cir. 1985).

Claughton imposes an element of conspiracy under § 1985 onto a claim for conspiracy under § 1983 that is not required.[5] "To state a claim for conspiracy to deprive an individual of a constitutional right in violation of § 1983, Plaintiff must allege that defendants (1) 'acted jointly in concert' and (2) performed an overt act (3) 'in furtherance of the conspiracy' that (4) resulted in the deprivation of a constitutional right." Harrison v. Prince William Cnty. Police Dept., 640 F. Supp. 2d 688, 706–07 (E.D. Va. 2009) (quoting Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996)). Here, Plaintiff has alleged that Claughton, Jones, and Tucker acted jointly and in concert by drafting a misleading statement to be presented to the magistrate. As a result of that joint act, invalid warrants were issued for Plaintiff and she was arrested—or rather, "seized" within the meaning of the Fourth Amendment. As a result of the potential for imprisonment, she was "chilled" in the exercise of her First Amendment rights. As alleged, Plaintiff has stated a claim for conspiracy under § 1983 and Counts 2 and 4 should proceed to trial.

---

[5] The case Claughton cited, Trerice v. Summons, concerned an action for conspiracy under 42 U.S.C. § 1985(3) and 1986.

2. Counts 1, 2, 3, 4, 6, and 7

For the remaining counts, Claughton asserts that Plaintiff has not alleged a lack of probable cause for her arrest. Rather he contends that, through her pleadings, she has established the *existence* of probable cause for her arrest.

Claughton argues that, under Virginia law, the only intent that is required to commit a larceny is the intent to deprive the owner of the item permanently. See Skeeter v. Commonwealth, 217 Va. 722, 725 (1977). It is irrelevant that Plaintiff did not intend to take possession of the dog herself; all that matters is that she meant to deprive Jones of the dog permanently by giving the dog to Animal Control. Claughton argues that the Complaint, as written, proves this. Plaintiff alleges she was incensed that Animal Control would return the animal to Jones in its condition. Accordingly, as Claughton's argument goes, she intended that Animal Control retain permanent ownership of the dog in contravention of Jones's rights, thereby committing a larceny.

Plaintiff responds by saying that the necessary level of intent is the intent "to steal," which Plaintiff lacked and which Claughton knew she lacked. See Pijor v. Virginia, 294 Va. 502, 511 ("The ultimate issue of fact in the larceny trial was whether . . . Pijor took the dog with the intent to steal him."). She contends that it is immaterial whether she cared if the dog was returned to its allegedly abusive owner; even if she did not want to the dog returned to him, the law did not qualify her actions as "larceny."

Claughton's argument is clever but unavailing at this stage. Plaintiff alleges that, once she picked up the dog, she attempted to call Jones and, when she was unable to do so, she sent him a Facebook message informing him that, *if he wanted his dog back*, the dog would be at Animal Control. Plaintiff alleges an intent *not* to deprive Jones of the dog. She also alleges that

Claughton knew these facts but did not disclose them to the magistrate when he secured warrants for her arrest. As such, she has adequately pled a lack of intent and that Claughton was aware of that.

In order to succeed on her claim under § 1983, Plaintiff is required to show that Claughton omitted from his application for a warrant "material facts with the intent to make, or with reckless disregard of whether they thereby make, the affidavit misleading." Miller v. Prince George's Cnty., MD, 475 F.3d 621, 627 (4th Cir. 2007) (quoting United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990)). "With respect to omission, 'reckless disregard' can be established by evidence that a police officer 'failed to inform the judicial officer of facts [he] knew would negate probable cause.'" Id. (quoting Beauchamp v. City of Noblesville, Inc., 320 F.3d 733, 743 (7th Cir. 2003)). Here, Plaintiff alleges that Claughton instructed Jones and Tucker to leave out vital facts which showed her lack of intent. Based on her statements to Jones as to where to get his dog, she has alleged a lack of intent, and thereby a lack of probable cause. Accordingly, Claughton's Motion to Dismiss will be denied.

## IV. CONCLUSION

For the foregoing reasons, Moser's Motion to Dismiss will be granted with respect to Counts 5 and 8, and Claughton's Motion to Dismiss will be denied.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 26th day of June, 2018.

s/Jackson L. Kiser  
SENIOR UNITED STATES DISTRICT JUDGE